## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHALANE RILEY, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>ZEUS NETWORKS, LLC,<br><br>       Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Chalane Riley ("Plaintiff"), individually and on behalf of all other persons similarly situated, by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

### <u>NATURE OF THE ACTION</u>

1.      This is a class action suit brought against Defendant Zeus Networks, LLC ("Zeus" or "Defendant") for violating the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710.

2.      The United States Congress passed the VPPA in 1988, seeking to confer onto consumers the power to "maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers." S. Rep. No. 100-599, at 8. "The Act reflects the central principle of the Privacy Act of 1974: that information collected for one purpose may not be used for a different purpose without the individual's consent." *Id.*

3.      The VPPA prohibits "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710.

4.      Zeus is a subscription-based video on demand streaming service that creates its own

1

original pre-recorded shows.  Zeus was founded by social media personalities Lemuel Plummer, DeStorm Power, Amanda Cerny, and King Bach, and its programs focus heavily on influencers. Zeus Networks, LLC owns and operates a website at www.thezeusnetwork.com (the "Website"), as well as the Zeus iOS and Android mobile applications, which are available on the iOS App Store and Google Play Store respectively.  Zeus sells subscription memberships to its video content, which allows members to stream movies and TV shows 24/7.

5.      Zeus also has a mobile application available on Android and iOS devices (together, the "App").  The App and the Website are collectively referred to as the "Zeus Network Service."

6.      The Zeus Network Service is available to stream on demand in the United States.

7.      The Zeus Network Service uses Vimeo OTT (over-the-top) for hosting its content as well as for advertising and analytics purposes.

8.      Unbeknownst to Plaintiff and Class Members, Defendant knowingly and intentionally discloses Zeus Network Service users' personally identifiable information— including a record of every video viewed by the user—to unrelated third parties, including but not limited to Vimeo, Inc.  By doing so, Defendant is violating the VPPA.

9.      Plaintiff brings this action for damages and other legal and equitable remedies resulting from Defendant's violations of the VPPA.

## FACTUAL BACKGROUND

## I.      HISTORY AND OVERVIEW OF THE VPPA

10.     The impetus for the VPPA begins with President Ronald Reagan's nomination of Judge Robert Bork to the United States Supreme Court.  During the confirmation process, a movie rental store disclosed the nominee's rental history to the Washington City Paper which then

published that record.  Congress responded by passing the VPPA, with an eye toward the digital

future.  As Senator Patrick Leahy, who introduced the Act, explained:

> It is nobody's business what Oliver North or Pratik Bork or Griffin
> Bell or Pat Leahy watch on television or read or think about when
> they are home.  In an area of interactive television cables, the growth
> of computer checking and check-out counters, of security systems
> and telephones, all lodged together in computers, it would be
> relatively easy at some point to give a profile of a person and tell
> what they buy in a store, what kind of food they like, what sort of
> television programs they watch, who are some of the people they
> telephone.  I think that is wrong.

S. Rep. 100-599, at 5-6 (cleaned up).

11.    In 2012, Congress amended the VPPA, and in so doing, reiterated the VPPA's

applicability to "so-called 'on-demand' cable services and Internet streaming services [that] allow

consumers to watch movies or TV shows on televisions, laptop computers, and cell phones."  S.

Rep. 112-258, at 2.

12.    The VPPA prohibits "[a] video tape service provider who knowingly discloses, to

any person, personally identifiable information concerning any consumer of such provider."  18

U.S.C.  §  2710(b)(1).    The  VPPA  defines  personally  identifiable  information  ("PII")  as

"information which identifies a person as having requested or obtained specific video materials or

services from a video service provider."  18 U.S.C. § 2710(a)(3).  A video tape service provider is

"any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale,

or delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C.

§ 2710(a)(4).

## II.    DEFENDANT IS A VIDEO TAPE SERVICE PROVIDER

13.    Zeus, via the Zeus Network Service, provides a "leading digital video-on-demand

entertainment  network"  service  offering  "original  premium  subscription  video  programming

generated by the most popular Social Media Influencers in the world."[1]  Founded by social media personalities King Bach, Amanda Cerny, DeStorm Power, and Lemuel Plummer (who also currently serves as Zeus' CEO),[2] Zeus's cast produces content that "reach[es] a global audience of over 100 million people.[3]   A Zeus subscription offers subscribers access to pre-recorded, original Zeus productions such as the "Baddies" and "Joseline's Cabaret" series.[4]

14.    To access the Zeus Network Service, a user must specifically register and pay for membership.  Registration includes creating an account where a user must provide their e-mail address and create an account password, as well as input their credit card and billing information.[5] Users pay either $5.99 per month or $59.99 per year, and a paid subscription is required to access Zeus' pre-recorded video content.

15.    Subscribers can watch Zeus content through their accounts on the Zeus Network Service via iOS devices, Android devices, and on the Zeus website.[6]

16.    The Zeus Network Service is available throughout the United States and has over one million downloads on the Google Play Store alone.[7]

---

[1] *The Zeus Network*, ZEUS, https://www.thezeusnetwork.com/the-zeus-network.

[2] *SVOD Network Zeus Launches With Vimeo Technology¸* Streaming Media (Oct. 24, 2018), https://www.streamingmedia.com/PressRelease/SVOD-Network-Zeus-Launches-With-Vimeo-Technology_48129.aspx; *see also* Amber Corrine, *Who Is Lemuel Plummer? An Explainer Of The Zeus Network Founder & CEO¸* VIBE (July 2, 2024 at 3:05pm), https://www.vibe.com/lists/who-is-lemuel-plummer-explainer-zeus-network/.

[3] *The Zeus Network*, ZEUS, https://www.thezeusnetwork.com/the-zeus-network.

[4] *Browse*, ZEUS, https://www.thezeusnetwork.com/browse.

[5] https://www.thezeusnetwork.com/checkout/subscribe/purchase?plan=yearly.

[6] *See Zeus*, APP STORE, https://apps.apple.com/us/app/the-zeus-network/id1399446592; *Zeus*, GOOGLE PLAY STORE, https://play.google.com/store/apps/details?id=com.thezeusnetwork.www &hl=en_US; *Zeus*, ZEUS.COM, https://thezeusnetwork.com.

[7] *Zeus*, GOOGLE PLAY STORE, https://play.google.com/store/apps/details?id=com.thezeusnetwork.www&hl=en_US.

III.    **DEFENDANT DISCLOSES USERS' PERSONALLY IDENTIFIABLE INFORMATION TO THIRD PARTY VIMEO**

    A.    **Testing Reveals That Defendant Illegally Shares Users' PII And Viewing Information With Third Party Vimeo**

17.    Prior to the commencement of this action, Plaintiff's counsel retained a private research company to conduct a dynamic analysis of the App and Website. A "dynamic analysis" records the transmissions that occur from a user's device.

18.    The private researchers tested what information (if any) Defendant discloses when a user watches a pre-recorded video on the Zeus Network Service.

19.    The analysis first established that Defendant incorporates multiple "application programming interfaces" ("APIs") into the Website and App.

20.    APIs "enable[] companies to open up their applications' data and functionality to external third-party developers, business partners, and internal departments within their companies."[8] An API can "work[] as a standalone solution or included within an SDK. … [A]n SDK often contains at least one API."[9] "SDK stands for software development kit and "is a set of software-building tools for a specific program, while "API" stands for application programming interface.[10] As used in this Complaint, "SDK" and "API" are referring to the same software.

21.    Defendant integrates into its Website and App the Vimeo API ("Vimeo", an API owned and operated by Vimeo, Inc.

---

[8] *Application Programming Interface (API)*, IBM, https://www.ibm.com/cloud/learn/api.

[9] *SDK vs. API: What's the Difference?*, IBM (July 13, 2011), https://www.ibm.com/blog/sdk-vs-api/.

[10] *Id.*

22.    Vimeo is an over-the-top ("OTT") video platform that is a "one-stop shop for everything from editing to distribution."[11]

23.    The Vimeo API allows users (such as Zeus) to host and sell streaming content, such as the Zeus Network.  However, it also functions to provide detailed analytics for advertising purposes.

24.    Specifically, Vimeo offers creators like Defendant a comprehensive technological toolset to "[i]mprove growth and scale seamlessly."[12]  This ranges from video editing and trimming, to transcription tools, to "[b]est-in-class analytics," "[g]lobal payment processing" services, "monetization options," and more.[13]  The plethora of technological and support options that Vimeo provides creators like Defendant allows Defendant to "launch a video subscription channel" with the full support of "all the tools and tech [Defendant] need[s] to grow [its] audience."[14]  In sum, Vimeo lets creators like Defendant "[f]ocuse on [their] content" while Vimeo "handle[s] the tech."[15]

25.    The dynamic analysis found that when Zeus Network Service users watch content on either the iOS or Android version of the App, Defendant discloses to Vimeo via the Vimeo API a user's (i) e-mail address, (ii) user ID, and (iii) the video ID.

---

[11] *Blog*, VIMEO, https://vimeo.com/blog/post/vimeo-video-settings-upload.

[12]    VIMEO,    https://vimeo.com/ott/why-vimeo?utm_medium=cpc&utm_source=google&utm_campaign=OTT_Search_NA_EN_Google_Buy_Brand_Evergreen&semtype=search&utm_term=vimeo%20monetization&utm_adgroup=Monetization&campaignid=19657080420&adgroupid=169245114932&device=c&gad_source=1&gclid=Cj0KCQiA_qG5BhDTARIsAA0UHSJzxyHIL2wDOHIdolc9KCVm_DGKZcGQKdOTvrhaIw3UGyf2hG22eXIaAphTEALw_wcB&gclsrc=aw.ds.

[13] *Id.*

[14] *Id.*

[15] VIMEO, https://vimeo.com/ott.

26.    The analysis also found that when Zeus Network Service users watch videos on the Website, Defendant discloses to Vimeo via the Vimeo API a user's (i) e-mail address, (ii) user ID, and (iii) the video title, video ID, and video URL of the video the user watches.

**B.    Defendant Discloses Users' Email Addresses And User IDs To Vimeo**

27.    As the dynamic analysis established, Defendant discloses to Vimeo, through the Vimeo API, a user's full name when a user streams content on the Zeus Network Service.

28.    An email address is a unique string of letters and numbers which designates an electronic mailbox.  As industry leaders,[16] trade groups,[17] and courts[18] agree, an ordinary person can use an email address to uniquely identify another individual.  Indeed, there exists multiple services that enable anyone with internet access and a credit card to look up who owns a particular email address.

29.    The following screenshot of the dynamic analysis depicts Defendant transmitting a Website users' e-mail address to Vimeo via the Vimeo API:



30.    Defendant also discloses to Vimeo, through the Vimeo API, an Android App user's e-mail address (highlighted in blue below):



---

[16] Allison Schiff, *Can Email Be The Next Big Online Identifier?*, AD EXCHANGER (Aug. 25, 2020), https://www.adexchanger.com/data-exchanges/can-email-be-the-next-big-online-identifier/ (quoting Tom Kershaw, CTO of Magnite, who said "[a]n email address is universally considered to be PII, so as such it can never be a valid identifier for online advertising").

[17] NETWORK ADVERTISING INITIATIVE, NAI CODE OF CONDUCT 19 (2020), https://thenai.org/wp-content/uploads/2021/07/nai_code2020.pdf (identifying email as PII).

[18] *See United States v. Hastie*, 854 F.3d 1298, 1303 (11th Cir. 2017) ("Email addresses fall within the ordinary meaning of information that identifies an individual. They can prove or establish the identity of an individual.").

31.     Defendant also discloses to Vimeo, through the Vimeo API, an iOS App user's e-mail address:

user_email=dikctyalor%40gmail.com&

32.     In addition, Defendant discloses users' user IDs to Vimeo via the Vimeo API.  A user ID is a unique string of numbers that Defendant assigns to an individual user after a user creates a Zeus account.  The unique user IDs provide Defendant with an additional identifier to track and categorize an individual user.

33.     The following excerpt of the dynamic analysis show Defendant transmitting to Vimeo through the Vimeo API a Website user's user ID:

user_id: 55278846

34.     The dynamic analysis also captured Defendant disclosing to Vimeo through the Vimeo API an Android user's user ID:

user_id=677617708

35.     And an iOS user's user ID:

user_id=67776262

36.     Defendant provides third parties such as Vimeo with backend tools to identify which user each disclosed "user_id" relates to.  This, in turn, provides Defendant and Vimeo with an additional layer of specification when identifying individual users, an added bonus that Defendant uses to boost its marketing, analytics, and advertising of individual users based on their collected personally identifiable information.

**C.     Defendant Discloses Class Members' Video-Viewing Information To Vimeo**

37.     As the dynamic analysis established, Defendant discloses to Vimeo, through the Vimeo API, the video ID and full name of the video viewed by Website users in the form of the

URL. The following image shows Defendant disclosing a Website user's watched video:

```
https://www.thezeusnetwork.com/videos/new-episode-baddies-caribbean-happy-birthda
y-lemmie
```

38.    Notably, the disclosed video's URL contains the full title of the watched video, in this case, "Baddies Caribbean[:] Happy Birthday Lemmie."

39.    In addition, the dynamic analysis captured Defendant disclosing App users' watched videos to Vimeo through the Vimeo OTT API in the form of video ID. Defendant discloses the video ID to Vimeo, which has backend tools to connect the disclosed video ID to a specific video the same way a video title can be connected to a specific video.

```
video_id=3213810.0          video_id =3328446
```

*Android App user*                          *iOS App user*

40.    Vimeo is able to identify the specific video a user watched through Defendant's disclosure of the video ID. After receiving the watched video's video ID from Defendant, Vimeo immediately uses its backend tools to match the video ID with an actual video. Vimeo then proceeds to send the title of the requested video to Defendant. The following excerpted screenshots are demonstrative:

```
},
"id": "3213810",
"is_free": "false",
]
"title": "4. Transforming Rollie: Go, Girl, Go",
"trailer": "false",
"type": "video",
```

```
},
"id": "3328446",
"is_free": "false",
]
"title": "7. Aunt-Tea Podcast: Big Freedia",
"trailer": "false",
"type": "video",
```

*Android App user*                          *iOS App user*

IV.  **DEFENDANT DISCLOSES USERS' PERSONALLY IDENTIFIABLE INFORMATION TO VIMEO FOR THE PURPOSES OF MARKETING, ADVERTISING, AND ANALYTICS**

41.    Defendant transmits its users' e-mail addresses, user ID, and video-viewing information to Vimeo via the Vimeo API so that Defendant can analyze user data, launch marketing campaigns, and target specific users or specific groups of users to receive certain content.  All of this helps Defendant monetize the Zeus Network Service and maximize revenue to retain and expand its paying user base.



42.    Vimeo's video analytics provides technological capabilities that further Defendant's marketing, analytics, and advertising capacities.

43.    Indeed, Vimeo provides creators like Defendant an entire toolkit to help "Monetize [C]ontent."[19]  The Vimeo "Video monetization platform" seeks to assist Defendant in "[t]urn[ing] viewers into paying subscribers."[20]  In this manner, Vimeo is so much more than a mere video

---

[19]  *Monetize Content*, VIMEO, https://vimeo.com/solutions/video-monetization?vcid=42493 &utm_medium=cpc&utm_source=google&utm_campaign=Core_Search_NA_EN_Google_Buy _Brand_Features_NewUser&utm_term=vimeo+analytics&utm_adgroup=Vimeo+-+Analytics& gclid=CjwKCAiAxea5BhBeEiwAh4t5KwiRqT0ezzGuT4nCTPcbV-VMNOOzogNa46OlO_oD 0RQo21WNUY4SwBoC324QAvD_BwE.

[20]  *Id.*

hosting platform. In addition to the video creation, sharing, and maintenance capabilities required to sustain an ordinary video streaming business, Vimeo provides creators like Defendant with "[a]nalytics … to help inform … content and distribution strategies."[21] And the Vimeo OTT technology package offers creators like Defendant the ability to "[g]o global" and reach "audiences in every market, language, and currency," all while retaining "[f]ull control of … [Defendant's] brand and subscriber data."[22]

44.  Further, Vimeo's video analytics toolset allows Defendant to "[m]onitor viewer behavior anywhere …. [Defendant can] [g]o beyond just view-count to learn how people are watching and when they're dropping off, then apply all [these] learnings to improve future content."[23]

45.  These tools specifically provide "real-time insights" … [so Defendant can] [t]rack relevant metrics like registration, interactivity, audience size," and later "revisit analytics any time."[24]

## V. DEFENDANT KNOWINGLY DISCLOSES USERS' PII TO VIMEO

46.  Based on the above, it is abundantly clear that Defendant *intentionally* and *knowingly* discloses to Vimeo its users' personally identifiable information and video-viewing

---

[21] *Id.*

[22] *OTT*, VIMEO, https://vimeo.com/ott?vcid=42493&utm_medium=cpc&utm_source=google &utm_campaign=Core_Search_NA_EN_Google_Buy_Brand_Features_NewUser&utm_term=vi meo+analytics&utm_adgroup=Vimeo+-+Analytics&gclid=CjwKCAiAxea5BhBeEiwAh4t5Kwi RqT0ezzGuT4nCTPcbV-VMNOOzogNa46OlO_oD0RQo21WNUY4SwBoC324QAvD_BwE.

[23] *Video Analytics*, VIMEO, https://vimeo.com/features/video-analytics?vcid=42493 &utm_medium=cpc&utm_source=google&utm_campaign=Core_Search_NA_EN_Google_Buy _Brand_Features_NewUser&utm_term=vimeo%20analytics&utm_adgroup=Vimeo+-+Analytics &campaignid=18127101553&adgroupid=148883140068&device=c&gad_source=1&gclid=Cjw KCAiAxea5BhBeEiwAh4t5KwiRqT0ezzGuT4nCTPcbV-VMNOOzogNa46OlO_oD0RQo21W NUY4SwBoC324QAvD_BwE&gclsrc=aw.ds.

[24] *Id.*

information.

47.     Notably, Defendant retains full control of subscribers' data that it collects.[25] Therefore, Defendant is intentionally *choosing* to send its subscribers' data to Vimeo to obtain the benefits of Vimeo's analytics, advertising, and marketing capabilities.  Defendant sends its subscribers' PII—including their video-viewing information—to Vimeo to "[a]ttract more subscribers," "[s]ell on-demand content globally," and learn how to "[o]ptimize [its] content."[26]

48.     Further, common sense dictates that a sophisticated media industry participant like Defendant—who integrated the Vimeo API precisely for its marketing, advertising, and analytics capabilities—is fully aware of the scope of the data that Vimeo receives.  Indeed, Defendant would need to contract with Vimeo specifically for its marketing, advertising, and analytics services, in order for the technologies here at issue to be implemented into the Zeus Network Service.

49.     Therefore, Defendant knowingly and intentionally provides personal information and video-viewing information to Vimeo for marketing, advertising, and analytics services.

## VI.    EXPERIENCE OF PLAINTIFF

50.     In or around 2023, Plaintiff Chalane Riley downloaded and installed the Zeus Network App onto her Android phone, then created an account and purchased a subscription to Zeus.  Shortly thereafter, Plaintiff began watching content on Zeus Network on both the Android App and the Website.  From 2023 to the present, Plaintiff regularly watched prerecorded videos on her Android phone as well as on the Zeus Website, and she has continued to watch content on Zeus Network through September 2024.

---

[25] VIMEO, https://vimeo.com/ott (noting how creators like Defendant retain "[f]ull control of [their] … subscriber data.").

[26] *Create an OTT platform*, VIMEO, https://vimeo.com/ott; *Monetize Content*, VIMEO, https://vimeo.com/solutions/video-monetization.

51.     Plaintiff provided Defendant with her name, e-mail address, and credit card information as part of signing up for the Zeus Network Service.

52.     At all relevant times, Plaintiff never consented to, agreed to, or otherwise permitted Defendant's disclosure of her PII to third parties, including Vimeo.

53.     Likewise, Defendant never gave Plaintiff the opportunity to prevent the disclosure of her PII to third parties, including Vimeo.

54.     Nevertheless, each time Plaintiff viewed a pre-recorded video on the Zeus Network Service on the App, Defendant disclosed Plaintiff's PII to Vimeo via the Vimeo API.  Specifically, Defendant disclosed Plaintiff's: (i) e-mail address, (ii) user ID, and (iii) video-viewing information including the video ID of the video Plaintiff watched.

55.     In addition, each time Plaintiff viewed a pre-recorded video on the Zeus Network Service through the Website, Defendant disclosed Plaintiff's PII to Vimeo via the Vimeo API.  Specifically, Defendant disclosed Plaintiff's: (i) e-mail address, (ii) the user ID, and (iii) video-viewing information including the video name, video ID, and the fact that Plaintiff actually watched the video.

56.     Using this information, Vimeo was able to identify Plaintiff and attribute her video viewing records to an individualized profile of Plaintiff.  Vimeo compiled Plaintiff's PII and activity on the Zeus Network Service (including video-viewing information), which Defendant used and continues to use for marketing, advertising, and analytics purposes.

## THE PARTIES

57.     Plaintiff Chalane Riley is, and has been at all relevant times, a resident of Massachusetts, and has an intent to remain there, and is therefore a citizen of Massachusetts.

58.     Defendant Zeus Networks, LLC is a Delaware limited liability company.

Defendant develops, owns, and operates the Zeus Network Service, which is available throughout the United States.

## JURISDICTION AND VENUE

59.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under a law of the United States (the VPPA).

60.    This Court has specific personal jurisdiction over Defendant because the Zeus Network Service collected and disseminated users' personally identifiable information giving rise to this lawsuit in this District, and the conduct giving rise to this action arises out of and relates to that business.

61.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this District.

## CLASS ALLEGATIONS

62.    **Class Definition:** Plaintiff seeks to represent a class of similarly situated individuals defined as all persons in the United States who used the Zeus Network Service to watch videos and had their PII transmitted to a third party without consent (the "Class").

63.    Subject to additional information obtained through further investigation and discovery, the above-described Class may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

64.    **Numerosity (Fed. R. Civ. P. 23(a)(1)):**  At this time, Plaintiff does not know the exact number of members of the Class.  However, given the popularity of Zeus Network, the number of persons within the Class is believed to be in the hundreds of thousands and therefore so numerous that joinder of all members is impractical.

65.    **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):**  There is

a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

    (a)    whether Defendant collected Plaintiff and Class members' PII;

    (b)    whether Defendant unlawfully disclosed and continues to disclose Zeus Network users' PII, including their video viewing records, in violation of the VPPA;

    (c)    whether Defendant's disclosures were committed knowingly; and

    (d)    whether Defendant disclosed Plaintiff's and Class members' PII without consent.

66.    **Typicality (Fed. R. Civ. P. 23(a)(3)):**  Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, watched videos on the Zeus Network Service (specifically, the App) and had her PII collected and disclosed by Defendant to third parties, such as Vimeo.

67.    **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained and is represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation, including litigation concerning the VPPA and its state-inspired offspring.  Plaintiff and his counsel are committed to vigorously prosecuting this class action.  Moreover, Plaintiff can fairly and adequately represent and protect the interests of the Class.  Neither Plaintiff nor her counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Class.  Plaintiff has raised viable statutory claims, of the type reasonably expected to be raised by members of the Class, and Plaintiff will vigorously pursue those claims.  If necessary, Plaintiff may seek leave of this Court to amend this Complaint to include additional representatives to represent the Class, additional claims as may be appropriate, or to amend the definition of the Class to address any steps that Defendant takes.

68.     **Superiority (Fed. R. Civ. P. 23(b)(3)):**  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.  Even if every member of the Class could afford to pursue individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class.  Plaintiff anticipates no difficulty in the management of this action as a class action.

## CAUSE OF ACTION

### COUNT I
### VIOLATION OF THE VPPA,
### 18 U.S.C. § 2710

69.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

70.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

71.     Defendant is a "video tape service provider" as defined by the VPPA because it "engage[s] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4), inasmuch as Defendant provides video (*i.e.*, "similar audio visual materials" under the VPPA's definition) to consumers via the Zeus Network Service.

72.     Plaintiff and members of the Class are "consumers" as defined by the VPPA. 18 U.S.C. § 2710(a)(1). As to members of the Class who downloaded the App, they are "consumers" because they downloaded, installed, created an account, provided their personal information, paid for, and subsequently watched pre-recorded videos using the Zeus Network App. *Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482, 487-89 (1st Cir. 2016). As to members of the class who used the Website, they are "consumers" because they created an account with Defendant for the provision of video services, "provide[d] consideration in the form of" payment and personal information for a subscription and received benefits in exchange (*e.g.*, access to Zeus Network's library), and otherwise established a "commitment, relationship, or association" with Defendant. *Id.* at 488-89 (cleaned up). Under the VPPA, therefore, Plaintiff and members of the Class are "subscribers" of "goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

73.     Plaintiff and members of the Class viewed pre-recorded videos using the Zeus Network Service. During these occasions, Defendant disclosed Plaintiff's and Class Members' PII to third party Vimeo. Specifically, Defendant disclosed Plaintiff's and Class members': (i) e-mail address, (ii) user ID, and (iii) the title of the videos Plaintiff and Class members watched (for Website users) and the video ID, including the fact that Plaintiff and members of the Class actually viewed the videos.

74.     The information disclosed by Defendant constitutes "personally identifiable information" because it makes it "reasonably and foreseeably likely to reveal which [Zeus Network] videos [Plaintiff and members of the Class] [] obtained." *Yershov*, 920 F.3d at 486; *see also* 18 U.S.C. § 2710(a)(3). Indeed, the information disclosed by Defendant to Vimeo enables Vimeo and even an ordinary person with Vimeo's backend tools to identify which specific videos

were watched by Plaintiff and members of the Class.

75.     Defendant's transmissions of Plaintiff's and Class members' PII to Twilio and Vimeo via the Segment API and Vimeo OTT API constitute "knowing[] disclosures" of Plaintiff's and members of the Classes' "personally identifiable information" to a person as proscribed by the VPPA.  18 U.S.C. § 2710(a)(1).

76.     Plaintiff and Class members did not provide Defendant with any form of consent—either written or otherwise—to disclose their PII to third parties, including Twilio and Vimeo.

77.     Nor were Defendant's disclosures made in the "ordinary course of business" as the term is defined by the VPPA.  In particular, Defendant's disclosures to Twilio and Vimeo were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership."  18 U.S.C. § 2710(a)(2).

78.     On behalf of himself and the Class, Plaintiff seeks: (i) declaratory relief; (ii) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with VPPA's requirements for protecting a consumer's PII; (iii) statutory damages of $2,500 for each violation of the VPPA pursuant to 18 U.S.C. § 2710(c); and (iv) reasonable attorneys' fees and costs and other litigation expenses.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks a judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

(a)     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b)     For an order declaring that Defendant's conduct violates the statutes referenced herein;

18

(c)    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)    An award of statutory damages to the extent available;

(e)    For punitive damages, as warranted, in an amount to be determined at trial;

(f)    For prejudgment interest on all amounts awarded;

(g)    For injunctive relief as pleaded or as the Court may deem proper; and

(h)    For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.

Dated: December 18, 2024

Respectfully submitted,

By: */s/ John F. Donovan, III*
John F. Donovan, III

**LAW OFFICES OF JOHN F. DONOVAN**
John F. Donovan, III
6 Beacon St., Suite 312
Boston, MA 02108
Telephone: (617) 872-1274
E-Mail:  jfdonovanesq@gmail.com

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (MA admissions pending)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com

*Attorneys for Plaintiff*