## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHALANE RILEY, individually and on behalf of all others similarly situated, | Case No. 1:24-cv-13120-GAO |
| Plaintiff, | Hon. George A. O'Toole, Jr. |
| v. | |
| ZEUS NETWORKS, LLC, | |
| Defendant. | |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Dated: March 10, 2025

**BURSOR & FISHER, P.A.**
Yitzchak Kopel (BBO #716245)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: ykopel@bursor.com

**LAW OFFICES OF JOHN F. DONOVAN**
John F. Donovan, III (BBO #551851)
6 Beacon St., Suite 312
Boston, MA 02108
Telephone: (617) 872-1274
E-Mail: jfdonovanesq@gmail.com

*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

**PAGE**

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................2

I.      THE MASSACHUSETTS LONG ARM STATUTE IS SATISFIED ..............................3

II.     THE DUE PROCESS CLAUSE IS SATISFIED ............................................................5

      A.     Defendant Purposefully Availed Itself Of The Privilege Of Doing Business In Massachusetts ...........................................................................................5

             1.     Defendant Derived Substantial Revenue From Massachusetts ......................................................................... 6

             2.     Defendant's Contacts With Massachusetts Were Made Knowingly ........................................................................ 8

      B.     Plaintiff's Claims Are Related To Defendant's Massachusetts-Based Conduct ...........................................................................................10

      C.     Exercising Personal Jurisdiction Over Defendant Is Reasonable .........................11

III.    ALTERNATIVELY, JURISDICTIONAL DISCOVERY IS WARRANTED ................13

CONCLUSION ...................................................................................................................14

i

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Adams v. Adams*,
  601 F.3d 1 (1st Cir. 2010) ............................................................................ 5

*Ainsworth v. Moffett Engineering, Ltd.*,
  716 F.3d 174 (5th Cir. 2013) ........................................................................ 7

*Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*,
  825 F.3d 28 (1st Cir. 2016) .......................................................................... 3

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ............................................................................... 10, 12

*Cossaboon v. Maine Medical Center*,
  600 F.3d 25 (1st Cir. 2010) .......................................................................... 6

*Curry v. Revolution Labs., LLC*,
  949 F.3d 385 (7th Cir. 2020) .................................................................... 8, 10

*Doffing v. Meta Platforms, Inc.*,
  2022 WL 3357698 (D. Or. July 20, 2022) ..................................................... 9

*Fairview Mach. & Tool Co. v. Oakbrook Int'l, Inc.*,
  56 F. Supp. 2d 134 (D. Mass. 1999) ........................................................... 10

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
  592 U.S. 351 (2021) .................................................................................... 10

*Francis v. Api Tech. Servs., LLC*,
  2014 WL 11462447 (E.D. Tex. Apr. 29, 2014) ........................................... 11

*Grice v. VIM Holdings Group, LLC*,
  280 F. Supp. 3d 258 (D. Mass. 2017) .......................................................... 11

*Hasbro Inc. v. Clue Computing Inc.*,
  994 F. Supp. 34 (D. Mass. 1997) ............................................................. 9, 12

*Hawkins v. Gerber Products Co.*,
  924 F. Supp. 2d 1208 (S.D. Cal. 2013) ....................................................... 11

*Healey v. Hydraforce, Inc.*,
  2005 WL 1009514 (Mass. Super. Ct. Mar. 18, 2005) ................................... 4

*Illinois v. Hemi Group LLC*,
    622 F.3d 754 (7th Cir. 2010) ........................................................................ 10

*Keds Corp. v. Renee Int'l Trading Corp.*,
    888 F.2d 215 (1st Cir. 1989) ...................................................................... 4, 5

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) .................................................................................... 2, 6

*Keeton v. Hustler Magazine, Inc.*,
    682 F.2d 33 (1st Cir. 1982), *rev'd and remanded*, 465 U.S. 770 (1984) .............................. 1, 6

*King v. PeopleNet Corp.*,
    2021 WL 5006692 (N.D. Ill. Oct. 28, 2021) .................................................... 11

*Knox v. MetalForming, Inc.*,
    914 F.3d 685 (1st Cir. 2019) ...................................................................... 3, 8

*Mojtabai v. Mojtabai*,
    4 F.4th 77 (1st Cir. 2021) ............................................................................ 4

*Morphotrust USA, LLC v. Identrix, LLC*,
    2016 WL 3512131 (D. Mass. June 21, 2016) ..................................................... 8

*Motus, LLC v. CarData Consultants Inc.*,
    520 F. Supp. 3d 87 (D. Mass. 2021) ............................................................... 5

*Motus, LLC v. CarData Consultants, Inc.*,
    23 F.4th 115 (1st Cir. 2022) ........................................................................ 13

*Popa v. Harriet Carter Gifts, Inc.*,
    52 F.4th 121 (3d Cir. 2022) ......................................................................... 12

*Pritzker v. Yari*,
    42 F.3d 53 (1st Cir. 1994) ...................................................................... 11, 12

*Rancourt v. Meredith Corp.*,
    2024 WL 381344 (D. Mass. Feb. 1, 2024) ............................................... passim

*Rockwell Automation, Inc. v. EU Automation, Inc.*,
    2022 WL 1978726 (D. Del. June 6, 2022),
    *report and recommendation adopted*, 2022 WL 3576231 (D. Del. Aug. 19, 2022) ................. 8

*S.D. v. Hytto Ltd.*,
    2019 WL 8333519 (N.D. Cal. May 15, 2019) ................................................... 11

*Saturn Management LLC v. GEM-Atreus Advisors, LLC*,
    754 F. Supp. 2d 272 (D. Mass. 2010) ............................................................ 12

*SCVNGR, Inc. v. Punchh, Inc.*,
    478 Mass. 324 (2017) ............................................................................... 2

*Ticketmaster-New York, Inc. v. Alioto*,
    26 F.3d 201 (1st Cir. 1994) ...................................................................... 5

*Trio v. Turing Video, Inc.*,
    2022 WL 4466050 (N.D. Ill. Sept. 26, 2022) .......................................... 7

*TriStrata Tech., Inc. v. Emulgen Labs., Inc.*,
    537 F. Supp. 2d 635 (D. Del. 2008) ........................................................ 7

*UMG Recordings, Inc. v. Kurbanov*,
    963 F.3d 344 (4th Cir. 2020) ................................................................... 7

*United States v. Swiss American Bank, Ltd.*,
    274 F.3d 610 (1st Cir. 2001) .................................................................... 5

*WebZero, LLC v. ClicVU, Inc.*,
    2008 WL 1734702 (C.D. Cal. Apr. 4, 2008) ........................................... 7

**STATUTES**

18 U.S.C. § 2710 ............................................................................................. 13

Mass. Gen. Laws ch. 223A, § 3 ............................................................. 2, 3, 4, 5

**RULES**

Fed. R. Evid. 106 ............................................................................................ 14

Plaintiff Chalane Riley ("Plaintiff") respectfully submits this opposition to Defendant Zeus Networks, LLC's ("Defendant") Motion to Dismiss (ECF No. 10) (the "Motion" or "MTD").

## INTRODUCTION

Over forty years ago, the Supreme Court held that New Hampshire could exercise jurisdiction over an out-of-state corporation where a magazine's circulation in New Hampshire "amount[ed] to less than one percent of their total circulation in the United States." *Keeton v. Hustler Magazine, Inc.*, 682 F.2d 33, 33 (1st Cir. 1982), *rev'd and remanded*, 465 U.S. 770 (1984). And just last year, Judge Burroughs found jurisdiction over an out-of-state corporation in a VPPA case where "2.02% of the total revenue Meredith generated from the App in the United States" and "3% of the App's users in the United States" came from Massachusetts. *Rancourt v. Meredith Corp.*, 2024 WL 381344, at *3 (D. Mass. Feb. 1, 2024).

Yet, despite these and copious other authorities finding jurisdiction over out-of-state corporations with similar percentages, Defendant claims it exempt from the reach of the Commonwealth's courts. That is because, as Defendant proudly touts, "Massachusetts represents a mere 1% (approximately) of Zeus' total direct sales *worldwide*," and "Massachusetts subscribers represent approximately 1% of its total subscribers *worldwide*." Declaration of Shane Norman (ECF No. 10-3) ("Norman Decl.") ¶¶ 15-16 (emphasis added). Not just in the U.S., *worldwide*.

As laid out below, the Norman Declaration attempts to hide the ball (for example, what is the actual number of users and subscriber revenue, not just the percentage), and the Court should allow for jurisdictional discovery to the extent there is any doubt that jurisdiction exists. But even on this record, it should be apparent jurisdiction is proper. After all, Defendant also touts it has a "a global audience of over 100 million people."[1] If even 1% of those people are paying $60 a

---

[1] THE ZEUS NETWORK, https://www.thezeusnetwork.com/the-zeus-network.

year,[2] that clearly suffices for jurisdiction under *Keeton*, *Rancourt*, and numerous other authorities.

The fact is, Defendant sold a service—its video network—to Massachusetts consumers, a "substantial number" (*Keeton*, 465 U.S. at 781) of Massachusetts citizens paid for that service, and Defendant made a substantial amount of money from those Massachusetts users. Defendant then disclosed those users' personally identifying information without consent to line its own pockets with advertising revenue and further user engagement. Compl. ¶¶ 25-26, 41-45. Defendant must come to Boston to answer for that violation of the VPPA.

For the following reasons, Defendant's Motion should be denied.

## ARGUMENT

"Prior to exercising personal jurisdiction over a nonresident defendant, a judge must determine that doing so comports with both the forum's long-arm statute and the requirements of the United States Constitution." *SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324, 325 (2017). The Massachusetts long-arm statute sets forth a number of grounds for jurisdiction over a non-resident defendant. *See generally* Mass. Gen. Laws ch. 223A, § 3. However, "[b]ecause the long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process, and in order to avoid unnecessary consideration of constitutional questions, a determination under the long-arm statute is to precede consideration of the constitutional question." *SCVNGR*, 478 Mass. at 325.

Assuming a prong of the Massachusetts long-arm statute is met, the Court analyzes jurisdiction under the federal Due Process Clause. Jurisdiction is proper under the Due Process Clause if "(1) the plaintiff's claim arises out of, or relates to, the defendant's activities in the forum, (2) the defendant's forum-state contacts represent a purposeful availment of the privilege of

---

[2] CREATE YOUR ACCOUNT, https://www.thezeusnetwork.com/checkout/subscribe/purchase.

conducting activities in that state, and (3) the exercise of specific jurisdiction is reasonable." *Rancourt v. Meredith Corp.*, 2024 WL 381344, at *6 (D. Mass. Feb. 1, 2024).

Here, jurisdiction is proper under both the Massachusetts long-arm statute and the Due Process Clause.

## I.    THE MASSACHUSETTS LONG ARM STATUTE IS SATISFIED

As relevant here, the Massachusetts long-arm statute provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from":

> (a) transacting any business in this commonwealth; … [or] (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

Mass. Gen. Laws ch. 223A, §§ 3(a), (d).  As to § 3(a), that is satisfied for the same reasons as purposeful availment under the Due Process Clause.  Argument § II.A, *infra*.  Indeed, "[t]his standard is not especially rigorous: an isolated and transitory contact with the forum is all the statute requires."  *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 n.3 (1st Cir. 2016) (cleaned up).  And there is no reason to discount Defendant's Massachusetts revenue "because those sales were part of a nationwide sales effort."  *Knox v. MetalForming, Inc.*, 914 F.3d 685, 692 (1st Cir. 2019) (rejecting same argument).

However, § 3(d) is also satisfied.  To that end, *Rancourt* is instructive.  There, a Massachusetts plaintiff brought a VPPA claim against an Iowa corporation.  *Rancourt*, 2024 WL 381344, at *1.  In evaluating the Massachusetts long-arm statute, the court found jurisdiction was proper pursuant to § 3(d).  Specifically, the court noted "Section 3(d) is to be construed extremely broadly."  *Id.*, at *5 (cleaned up).  The court also noted "the First Circuit has held that the test for

determining whether revenue is 'substantial,' within the meaning of the long-arm statute, is lenient, does not require that a certain absolute sales threshold or percentage of sales be met, and that '[t]he sale of 6000 pairs of shoes for $15,000 easily meets this requirement.'" *Id.* (quoting *Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215, 219 (1st Cir. 1989)); *see also Healey v. Hydraforce, Inc.*, 2005 WL 1009514, at *1 (Mass. Super. Ct. Mar. 18, 2005) ("Cases construing § 3(d) demonstrate that the [several hundred thousand dollars in] … revenue which [defendant] derived, directly and indirectly, from sales of goods in the Commonwealth substantially surpass any minimum requirement."). With this standard in mind, the *Rancourt* court had no trouble concluding that "Meredith's nearly $70,000 in ad revenue from devices located in Massachusetts over two years meets this requirement." *Rancourt*, 2024 WL 381344, at *6.

So, too, here. Although Defendant's declaration is incomplete (Argument § III, *infra*), Defendant nonetheless admits that 1% of its total subscribers and total sales *worldwide* (not just in the U.S.) come from Massachusetts. Norman Decl. ¶¶ 15-16. The Supreme Court has characterized sales of less than one percent to be a "substantial number." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984). Indeed, as noted above, the First Circuit found "[t]he sale of 6000 pairs of shoes for $15,000 [to] easily meet[] this requirement." *Keds Corp.*, 888 F.2d at 219. And Plaintiff was injured in Massachusetts, because that is where his PII was disclosed without his consent. Compl. ¶¶ 50, 54-55. Accordingly, § 3(d) is also satisfied.

Defendant protests, claiming because it is not subject to general personal jurisdiction in Massachusetts under the Due Process Clause, § 3(d) cannot apply. MTD at 9. As noted above, the Massachusetts long-arm statute is distinct from the Due Process Clause. *See Mojtabai v. Mojtabai*, 4 F.4th 77, 85 (1st Cir. 2021). Accordingly, "general personal jurisdiction" for the Massachusetts long-arm statute is different than that of the Due Process Clause. The two concepts

have to be distinct, in fact, because if Defendant were headquartered or incorporated here (*i.e.*, if the Court possessed general personal jurisdiction over Defendant), then there would be no need for a jurisdictional analysis. *See Rancourt*, 2024 WL 381344, at *5-6 (finding jurisdiction under § 3(d) even though, for Due Process analysis, "Mr. Rancourt argues only that the Court has specific personal jurisdiction"). And, as the First Circuit has made clear, seemingly small numbers of sales are sufficient to satisfy § 3(d), regardless of whether they would constitute "general personal jurisdiction" under the Due Process Clause. *See Keds Corp.*, 888 F.2d at 219.

In sum, §§ 3(a) and 3(d) of the Massachusetts long-arm statute are satisfied.

## II.    THE DUE PROCESS CLAUSE IS SATISFIED

### A.    Defendant Purposefully Availed Itself Of The Privilege Of Doing Business In Massachusetts

"The focus of the purposeful availment inquiry is the defendant's intentionality." *Adams v. Adams*, 601 F.3d 1, 7 (1st Cir. 2010). "This prong is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." *United States v. Swiss American Bank, Ltd.*, 274 F.3d 610, 624 (1st Cir. 2001).

There are "two cornerstones" for this analysis: "foreseeability" and "voluntariness." *See Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 208 (1st Cir. 1994). Moreover, "[t]o maintain the constitutional limits on personal jurisdiction in internet commerce cases, courts in this Circuit require 'something more' than a nationally accessible website [or mobile application] to support the exercise of personal jurisdiction." *Motus, LLC v. CarData Consultants Inc.*, 520 F. Supp. 3d 87, 92 (D. Mass. 2021). That inquiry focuses on "the extent to which the defendant has actually and purposefully conducted commercial or other transactions with forum state residents through

its website [or mobile application]." *Cossaboon v. Maine Medical Center*, 600 F.3d 25, 35 (1st Cir. 2010).

With this standard in mind, it is clear Defendant purposefully availed itself of the Massachusetts market.

### 1.    Defendant    Derived    Substantial    Revenue    From    Massachusetts

Two cases should guide the Court's reasoning here. *First*, in *Keeton v. Hustler Magazine, Inc.*, 682 F.2d 33, 33 (1st Cir. 1982), *rev'd and remanded*, 465 U.S. 770 (1984), the "defendants' contacts with New Hampshire consist[ed] of sending magazines there to be circulated through independent distributors," and the "circulation in New Hampshire amount[ed] to *less than one percent* of their total circulation in the United States." (Emphasis added). Nonetheless, the Supreme Court held the defendant's circulation of a "substantial number" of "magazines in the forum State [was] sufficient to support an assertion of jurisdiction" because "[s]uch regular monthly sales of thousands of magazines cannot by any stretch of the imagination be characterized as random, isolated, or fortuitous." *Keeton*, 465 U.S. at 773-74, 781; *see also id.* at 781 ("Where, as in this case, respondent … has continuously and deliberately exploited the New Hampshire market, it must reasonably anticipate being haled into court there…").

*Second*, in *Rancourt*, 2024 WL 381344, at *1, the plaintiff also brought suit against an app developer for violation of the VPPA. Over a two-year period, "advertisements that were run on the App in the United States [that] were run on devices located in Massachusetts … generated $66,677.96 in revenue, accounting for 2.02% of the total revenue Meredith generated from the App in the United States." *Id.*, at *3. In addition, "54,302, or 3% of the App's users in the United States, were located in Massachusetts." *Id.* The court held such figures were sufficient to show the defendant's "knowing receipt of substantial revenue from forum residents, and thus that [the

6

defendant] purposefully availed itself of the Massachusetts market." *Id.*, at *10 (internal quotations omitted).

Applying *Keeton* and *Rancourt* here, the purposeful availment prong is satisfied. As Defendant admits, in 2024 alone, Defendant's "direct sales" from Massachusetts residents "represent approximately 1% of its total sales *worldwide*," and its Massachusetts subscribers "consisted of 1% of its total subscribed *worldwide*." Norman Decl. ¶¶ 15-16 (emphasis added). As described more fully below, these figures leave much to be discovered, such as the actual revenue and user figures, Defendant's advertising revenue in Massachusetts, and the scope of both during the two-year statute of limitations. Argument § III, *infra*.

Regardless, just as the less than 1% circulation of *Hustler Magazine* in New Hampshire was sufficient for jurisdiction in *Keeton*, so too are the numbers here. *See also*, *e.g.*, *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 349 (4th Cir. 2020) (jurisdiction established where "nearly 500,000 (or about 2% of all domestic visitors) came from Virginia" and "about 95,000 (or about 2%) of 2conv's domestic visitors came from Virginia"); *WebZero, LLC v. ClicVU, Inc.*, 2008 WL 1734702, at *6 (C.D. Cal. Apr. 4, 2008) (jurisdiction established where "California residents have both bought and utilized services from ClicVU, given that 4.2% of its members list California billing addresses, and ClicVU has asserted that users with such billing addresses accounted for $1200 in sales in 2007"); *Trio v. Turing Video*, *Inc.*, 2022 WL 4466050, at *4 (N.D. Ill. Sept. 26, 2022) (jurisdiction established where "Turing had at least 30 customers in Illinois during the relevant period"); *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 638, 642 (D. Del. 2008) (finding jurisdiction where "[o]rders from customers in Delaware constituted 0.0015 percent of Emulgen's revenue in 2004, and 0.000008 percent of Emulgen's revenue in 2006."); *Ainsworth v. Moffett Engineering, Ltd.*, 716 F.3d 174, 179 (5th Cir. 2013)

(finding jurisdiction where "Mississippi sales accounted for approximately 1.55% of Moffett's United States sales during that period").[3]

Defendant protests, claiming "[n]othing in the record indicates that Zeus has sought to serve Massachusetts residents at all, let alone sought to serve them in particular." MTD at 13. As to the former, Defendant's subscriber count and revenue beg to differ. And as to the latter, "[t]here is no *per se* requirement that the defendant *especially* target the forum in its business activity." *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 399 (7th Cir. 2020) (emphasis added). Thus, "the question is not whether a defendant sells its product across the U.S.; it is instead whether a defendant's forum connection is such that the exercise of jurisdiction is essentially voluntary and foreseeable." *Knox*, 914 F.3d at 692 (internal quotations omitted). Defendant's sizable userbase and subscriber revenue from Massachusetts, although an incomplete picture, render it "voluntary and foreseeable" that Defendant be hailed into court here.

> 2.   *Defendant's Contacts With Massachusetts Were Made Knowingly*

As the Norman Declaration makes clear, Defendant tracks user revenue on a state-by-state basis and is thus "aware of its many Massachusetts users and the resulting [] revenue." *Rancourt*, 2024 WL 381344, at *9; *see also* Norman Decl. ¶¶ 15-16; *Morphotrust USA, LLC v. Identrix, LLC*, 2016 WL 3512131, at *7 (D. Mass. June 21, 2016) ("Where, as here, the defendant knows that the target of its allegedly wrongful conduct is located in Massachusetts, the purposeful availment prong is satisfied."). Further, "Plaintiff provided Defendant with her … credit card information as

---

[3] There is also no bright-line number for what is sufficient revenue for jurisdiction. On the contrary, arguing that the forum-related revenue is "relatively little" "has been rejected repeatedly because even a single sale of an accused product" is sufficient to confer specific jurisdiction over a defendant." *See Rockwell Automation, Inc. v. EU Automation, Inc.*, 2022 WL 1978726, at *5 (D. Del. June 6, 2022), *report and recommendation adopted*, 2022 WL 3576231 (D. Del. Aug. 19, 2022) (cleaned up).

part of signing up for the Zeus Network Service" (Compl. ¶ 51), which necessarily includes billing address.  For this reason, too, Defendant knows Massachusetts users are purchasing its service.

Moreover, Defendant discloses its users' PII to Vimeo to analyze and monetize its viewership, including by "target[ing] specific users or specific groups of users to receive certain content."  Compl. ¶¶ 41-45.  Thus, as in *Rancourt*, Defendant "uses the information it collects to tailor advertisements and content to increase user engagement; thus, taking a voluntary act to foster the regular flow or regular course of sales in the Commonwealth."  *Rancourt*, 2024 WL 381344, at *9 (cleaned up); *see also Doffing v. Meta Platforms, Inc.*, 2022 WL 3357698, at *4 (D. Or. July 20, 2022) (finding jurisdiction over app developer where "Snap tracks Oregon residents by their location and monitors how they use the product so that it can recommend new connections, products, or activities in order to increase user engagement").  Defendant also "purposefully directed its [service] at all the states" and "did nothing to avoid Massachusetts" *Hasbro Inc. v. Clue Computing Inc.*, 994 F. Supp. 34, 45 (D. Mass. 1997) (finding jurisdiction because the defendant).

Defendant contends it has not "availed itself of the privilege of doing business in Massachusetts" because "Zeus' contact with Massachusetts is based on Plaintiff's unilateral activity of being a Massachusetts resident and choosing to use the app and website while in Massachusetts."  MTD at 13.  Not so.  Defendant derived substantial revenue from Massachusetts, had an active userbase here, and used Massachusetts-specific PII to tailor and target its services.  Compl. ¶¶ 41-45.  Defendant's contact here is thus not limited to Plaintiff accessing the Zeus Network Service here.  Quite the contrary, Defendant

> created [a] commercial, interactive website[] through which customers could purchase [subscriptions] from [Defendant]. [Defendant] held itself out as open to do business with every state (including [Massachusetts]) … After the customers made their

> purchases online, Hemi [supplied subscriptions] to [] various destinations. *It is [Defendant] reaching out to residents of [Massachusetts], and not the residents reaching back, that creates the sufficient minimum contacts with [Massachusetts] that justify exercising personal jurisdiction over [Defendant] in [Massachusetts].*

*Illinois v. Hemi Group LLC*, 622 F.3d 754, 758 (7th Cir. 2010) (emphasis added).  Defendant's "physical presence … in Massachusetts is not required." *Fairview Mach. & Tool Co. v. Oakbrook Int'l, Inc.*, 56 F. Supp. 2d 134, 137 (D. Mass. 1999); *see also Curry*, 949 F.3d at 398 (holing "physical presence is not necessary for a defendant to have sufficient minimum contacts with a forum state"); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (describing it as "an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire [and electronic] communications across state lines, thus obviating the need for physical presence within a State in which business is conducted").

**B.    Plaintiff's Claims Are Related To Defendant's Massachusetts-Based Conduct**

Jurisdiction also requires Plaintiff to show her claim "arise[s] out of or relate to the [D]efendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021) (cleaned up).  "[A] strict causal relationship between the defendant's in-state activity and the litigation" is not required. *Id.*

Here, Plaintiff's VPPA claims arise out of and relate to Defendant's Massachusetts-based conduct.  Defendant offered up the Zeus Network Service for sale in Massachusetts, and Plaintiff, like others, subscribed to the Zeus Network Service.  Compl. ¶ 50.  Defendant derived substantial revenue from Massachusetts subscribers—not just the subscription fees, but also by disclosing PII to Vimeo and therefore monetizing its viewership. *Id.* ¶¶ 41-45.  Accordingly, Plaintiff's claims— the disclosure of her PII to Vimeo—relate to Defendant's Massachusetts conduct—the receipt of

subscriber revenue from Massachusetts and monetizing Massachusetts viewership of the Zeus

Network Service. *King v. PeopleNet Corp.*, 2021 WL 5006692, at *7 (N.D. Ill. Oct. 28, 2021)

("King's [] claims arise directly out of PeopleNet's biometric information business in Illinois"

because "PeopleNet's conduct in the Illinois biometric information market led to it capturing

King's biometric data in Chicago"); *S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *5 (N.D. Cal. May

15, 2019) ("The suit-related conduct most pertinent for the analysis at hand is Hytto's alleged

interception of communications to (or from) persons in the U.S."); *Francis v. Api Tech. Servs.,

LLC*, 2014 WL 11462447, at *6 (E.D. Tex. Apr. 29, 2014) ("allegations of hacking" into a personal

computer involve "activity that is clearly directed at the forum state").

### C. Exercising Personal Jurisdiction Over Defendant Is Reasonable

Because the first two elements of Due Process are satisfied, Defendant now "bears the

burden of proof to show unfairness" of exercising jurisdiction over it in Massachusetts. *Grice v.

VIM Holdings Group, LLC*, 280 F. Supp. 3d 258, 274 (D. Mass. 2017).  To determine

reasonableness, the Court evaluates the five "gestalt factors":

> (1) the defendant's burden of appearing, (2) the forum state's
> interest in adjudicating the dispute, (3) the plaintiff's interest in
> obtaining convenient and effective relief, (4) the judicial system's
> interest in obtaining the most effective resolution of the controversy,
> and (5) the common interests of all sovereigns in promoting
> substantive social policies.

*Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994).  Defendant does not even come close to meeting

its burden here.

*First*, Defendant's burden of appearing is minimal, as "advances in technology have made

it easy for documents to be transferred to different locations." *Hawkins v. Gerber Products Co.*,

924 F. Supp. 2d 1208, 1216 (S.D. Cal. 2013).  And Defendant "does not allege anything 'special

or unusual' about its situation other than the ordinary inconvenience of litigating an action in

another state." *Hasbro*, 994 F. Supp. 3d at 45 (citing *Pritzker*, 42 F.3d at 64); *see also Saturn Management LLC v. GEM-Atreus Advisors, LLC*, 754 F. Supp. 2d 272, 281 (D. Mass. 2010) (exercising jurisdiction in Massachusetts where defendant alleged their principal place of business is California, that their key witnesses and documents are located in California, and that they do not have any offices or conduct any business in Massachusetts."); *Rancourt*, 2024 WL 381344, at *11 ("Although the App is nationally available and the VPPA claim might plausibly be filed against Meredith in any U.S. state, Meredith's appearance as a defendant would be equally burdensome in any other state.").

*Second*, Massachusetts has a significant interest in adjudicating this dispute, as Massachusetts is where Plaintiff accessed the Zeus Network Service and where his PII and video-viewing information was disclosed by Defendant to Vimeo.  Compl. ¶¶ 56, 62; *cf. Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 131 (3d Cir. 2022) ("NaviStone intercepted Popa's communications at the point where it routed those communications to its own servers.  And that was at Popa's browser, not where the signals were received at NaviStone's servers.").  On top of this, Defendant has purposefully availed itself of the privilege of doing business in Massachusetts. Argument § II.A, *supra*.  And a "State generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state-actors."  *Burger King Corp.*, 471 U.S. at 473 (cleaned up).

*Third*, Defendant admits "Massachusetts would provide the *most convenient and effective* relief."  MTD at 15 (emphasis added).  Not "equally convenient and effectively," the *most* convenient and effective.  Thus, Defendant concedes this factor.

*Fourth*, again, Defendant admits that "Massachusetts would provide the *most convenient and effective* relief."  MTD at 15 (emphasis added).  Thus, Defendant's gripes against this factor

are hypocritical. In any event, the Central District of California—where Defendant is headquartered—has 588 civil cases per judge, while this District has 437 cases per judge.[4] On the other hand, the Central District of California has a negligibly faster disposition time for civil cases (3.9 months to 7.5 months). Thus, this factor is, at worst, neutral, given both forums seem more or less equally equipped to adjudicate this case in a timely manner.

*Fifth*, as noted above, Defendant knowingly targeted and derived substantial revenue from Massachusetts-based users based on the disclosure of Massachusetts users' PII. Argument §§ II.A.B, *supra*. It is not unreasonable to exercise jurisdiction over Defendant in these circumstances.

## III.    ALTERNATIVELY, JURISDICTIONAL DISCOVERY IS WARRANTED

As argued above, the Court should find Plaintiff has met her burden to demonstrate specific jurisdiction over Defendant. But to the extent the Court finds Plaintiff's showing to be lacking, the Court should allow for jurisdictional discovery. *See Rancourt*, 2024 WL 381344, at *3 (finding specific jurisdiction after "the Court allowed jurisdictional discovery to develop a better understanding of the revenue Meredith derives from App users in Massachusetts"). Jurisdictional discovery should be allowed where a plaintiff makes "a colorable claim of jurisdiction." *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 128 (1st Cir. 2022) (cleaned up).

Here, Plaintiff's already colorable showing is strengthened by the Norman Declaration and the many questions it leaves unanswered. For instance, Defendant only reports on Massachusetts users and subscriber revenue for a period of two months (Norman Decl. ¶¶ 15-16), rather than the same for the full two-year statute of limitations period. 18 U.S.C. § 2710(c)(3). Defendant also

---

[4] U.S. DISTRICT COURT — JUDICIAL CASELOAD PROFILE, https://www.uscourts.gov/sites/default/files/2025-02/fcms_na_distprofile1231.2024.pdf.

fails to disclose its direct or programmatic advertising revenue from Massachusetts during the class period, which is also relevant to jurisdiction.[5]

Defendant also only gives percentages of its users and revenue as compared to its *worldwide* userbase. Defendant's failure to say what the actual numbers are is inappropriate, as Defendant is not be permitted to submit partial evidence in support of its MTD. Fed. R. Evid. 106 ("If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part — or any other statement — that in fairness ought to be considered at the same time.").

Defendant's use of the "worldwide" number (as opposed to just the U.S.) is also misleading. Presumably, the portion of Massachusetts users as compared to the U.S. userbase is greater than as compared to Defendant's worldwide userbase, and only the U.S. matters because the VPPA is a U.S. statute. On the other hand, to the extent the Court takes the worldwide figure into account, however, Defendant boasts it has a "global audience of over 100 million people."[6] 1% of that number is 1 million people, which seems more than sufficient for jurisdiction.

Given the multiple unanswered questions with Defendant's incomplete declaration, the Court should order jurisdictional discovery to the extent it has any questions about whether jurisdiction exists.

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in full. To the extent that

---

[5] Defendant contends it has "never directly solicit[ed] or advertised in Massachusetts." Norman Decl. ¶ 7. That is a red herring. Although whether Defendant advertised its service in Massachusetts would be a basis for jurisdiction, so too is whether, as here, Defendant disclosed PII to a third party so it could target Massachusetts users with advertisements, from which Defendant derived revenue. Defendant does not provide its revenue as to the latter.

[6] THE ZEUS NETWORK, https://www.thezeusnetwork.com/the-zeus-network.

any portion of Defendant's Motion is granted, Plaintiff respectfully requests leave to amend.

Dated: March 10, 2025                    Respectfully submitted,

                                         By: */s/ Yitzchak Kopel*
                                              Yitzchak Kopel

                                         **BURSOR & FISHER, P.A.**
                                         Yitzchak Kopel (BBO #716245)
                                         1330 Avenue of the Americas, 32nd Floor
                                         New York, NY 10019
                                         Telephone: (646) 837-7150
                                         Facsimile: (212) 989-9163
                                         E-Mail: ykopel@bursor.com

                                         **LAW OFFICES OF JOHN F. DONOVAN**
                                         John F. Donovan, III (BBO #551851)
                                         6 Beacon St., Suite 312
                                         Boston, MA 02108
                                         Telephone: (617) 872-1274
                                         E-Mail: jfdonovanesq@gmail.com

                                         *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 10, 2025, I electronically filed the foregoing document with

the Court's CM/ECF system, which will provide e-mail notice to all counsel of record.

By: <u>*/s/ Yitzchak Kopel*</u>
        Yitzchak Kopel